# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN BELTRAN and JOSE PEREZ on behalf of themselves, all others similarly situated and the general public,<br><br>Plaintiff,<br>vs.<br><br>D III TRANSPORT CORPORATION, a California Corporation; DOES 1 through 100, Inclusive<br><br>Defendants. | Case No.: 3:12-CV-2335-JM (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND AND *SUA SPONTE* REMANDING THIS MATTER TO STATE COURT** |

Plaintiffs Christian Beltran and Jose Perez (together "Plaintiffs"), both residents of California, filed a first amended complaint ("FAC") against D III Transport Corporation ("DIII") on July 24, 2012. Plaintiffs sought to recover monetary damages for various California Labor Code violations related to DIII's failure to provide Plaintiffs with rest or meal periods, failure to compensate Plaintiffs for missed rest or meal periods, and other associated claims. Defendant removed this action to federal court on September 25, 2012, claiming that this court has jurisdiction under 28 U.S.C. § 1331 because the action was entirely precluded under the Federal Aviation Administration Authorization Act ("FAAAA"). DIII later filed a motion to dismiss for failure to state a claim or, in the alternative, a motion to strike the complaint.

Plaintiffs counter that this court has no subject matter jurisdiction and that the FAAAA does preempt their claims. For the following reasons, this court grants DIII's motion to dismiss with leave for Plaintiffs to file an amended complaint in state court for any non-preempted claims.

**I. BACKGROUND**

Plaintiffs bring this representative action against DIII on behalf of the State of California as provided by the Private Attorneys General Act ("PAGA"). FAC at 6-7. DIII is a California corporation that supplies, prepares, and installs aggregates and asphalt. Id. at 7. DIII employed Plaintiffs as California-based hourly paid drivers. Id. at 6. Beltran was employed from approximately April 2004 to April 2012. Id. at 6. Perez, who is currently a DIII employee, began his employment in April 2010. Id.

Plaintiffs allege that they are "aggrieved employees who . . . were misclassified despite the fact that the tasks/duties performed fail to plainly and unmistakably meet the requirements of any recognized exemption under California law." Id. at 7. During their respective employments, Beltran and Perez allege that DIII deprived them of the off-duty meal periods required by California law. Nonetheless, DIII "pre-printed .5 hour automatic deductions from work hours on driver schedules and had no other mechanism to ensure that off-duty meals were timely provided or . . . [that] payment for both actual wages lost and a premium wage for late, missed, or interrupted meal periods [were paid]." Id. at 6-7. California law requires employers to pay employees an additional hour of premium pay at the employer's regular rate of compensation for each day that they fail to receive the specified meal and rest periods. Id. at 17-18.

Accordingly, Plaintiffs claim that DIII did not keep accurate records of whether the required meal and rest breaks were taken, as required by California law. Id. at 7-8. This purported failure to account for and keep accurate records of breaks actually taken allegedly resulted in Plaintiffs not receiving all premium wages, all overtime wages, and accurate itemized wage statements reflecting these premium and overtime wages. Id. at 11-12.

Accordingly, Plaintiffs assert nine causes of action: (1) illegal wage deduction/wage forfeiture in violation of California Labor Code §§ 221 to 224; (2) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512 as well as Industrial Welfare Commission ("IWC") Order 9(11); (3) failure to provide rest periods in violation of California Labor Code §§ 226.7 and 512 as well as IWC Order 9(11); (4) failure to pay overtime wages in violation of California Labor Code §§ 1194 and 510; (5) failure to pay prevailing wages upon public work sites in violation of California Labor Code §§ 1773, *et seq.*; (6) failure to provide accurate itemized wage statements and records of all hours worked in violation of California Labor Code § 226; (7) failure to timely pay all wages due upon separation in violation of California Labor Code § 203; (8) unfair business practices in violation of California Business & Professions Code §§ 17200, *et seq.*; and (9) violations of PAGA, California Labor Code §§ 2698, *et seq.*

## II. DISCUSSION

### A. Legal Standard

For Plaintiffs to overcome this 12(b)(6) motion, their "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A facial challenge to a law does not require further facts to be developed because it only constitutes a question of law. Fortuna Enters. L.P. v. Los Angeles, 673 F. Supp. 2d 1000, 1003 (C.D. Cal. 2008).

**B. Discussion**

DIII argues that Plaintiffs have failed to state a claim upon which relief could be granted because the FAAAA preempts their State law claims. "Congress enacted the [FAAAA] in 1994 to prevent States from undermining federal deregulation of interstate trucking." Am. Trucking Ass'ns v. Los Angeles, 660 F.3d 384 (9th Cir. 2011) (citing Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 368; Tocher v. City of Santa Ana, 219 F.3d 1040, 1045 (9th Cir. 2000)). To this end, the FAAAA provides that "a State [or] political subdivision of a State . . . may not enact or enforce a law, regulation, or other provision having force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

To determine whether the FAAAA preempts a State action, this court must first analyze whether the State action relates to a "price, route, or service of any motor carrier," 49 U.S.C. § 14501(c)(1); Am. Trucking Ass'ns, 660 F.3d at 395. In Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370-71, the Supreme Court determined that this FAAAA provision should be interpreted consistently its past interpretation of the Airline Deregulation Act of 1978 ("ADA"), which contained a similar provision. Rowe, 552 U.S. at 370. The Court first interpreted the ADA's similar provision in Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992). Under Morales, preemption may occur even if a State law's effect on rate, routes, or services is "only indirect" provided that those State laws have a "significant impact" related to Congress' deregulatory intent. Id. at 390; Rowe, 552 U.S. at 370-371. Whether a State law is consistent with federal regulation "makes no difference." Rowe, 552 U.S. at 370 (affirming holding in Morales, 504 U.S. at 386-87). Thus, any State action that indirectly, but significantly, impacts the price, route, or service of any motor carrier is similarly precluded if the other Morales elements are met, irrespective of whether it is otherwise consistent with federal regulation.

If the court finds that the State action relates to a price, route, or service of any motor carrier, then the court must determine whether the provision was enacted pursuant to the "State's regulation of the market, rather than the State's participation in the market in a proprietary capacity." Am. Trucking Ass'ns, 660 F.3d at 395. A State provision enacted pursuant to its regulation of the market may be preempted, while a State enacted provision pursuant to the State's participation in the market is not. Id.

If the first two Morales elements are met, the court must determine whether a State enacted provision regulating the market falls under an express exemption enumerated in the FAAAA. 49 U.S.C. § 14501(c)(2) (permitting States to regulate "safety, impose highway route controls or limitations based on the size or weight of the motor vehicle, and set minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization"); Am. Trucking Ass'ns, 660 F.3d at 395. If a State enacted provision to regulate the market significantly impacts motor carriers and does not fall under an enumerated exemption, then it is preempted. Id.; 49 U.S.C. § 14501(c).

Of the Morales elements, the parties' arguments primarily focus on the first Morales element: whether California's meal and rest periods have an indirect, but significant impact on motor carriers. In support of dismissal, DIII notes that courts in the Southern District of California, Central District of California, and Eastern District of California dismissed similar claims after determining that the FAAAA preempted California's meal and rest period laws because of their significant indirect impact on motor carriers. See, e.g., Dilts v. Penske Logistics LLC, 819 F. Supp. 2d 1109 (S.D. Cal. 2011); Esquivel v. Vistar Corp., 2012 WL 516094 (C.D. Cal. Feb. 8, 2012); and Aguiar v. Cal. Sierra Express, 2012 WL 1593202 (E.D. Cal. May 4, 2012). The Dilts, Esquivel, and Aguiar plaintiffs asserted nearly identical claims to the present Plaintiffs' claims, including that their wages were deducted for untaken meal breaks. Dilts, 819 F. Supp. 2d at 1112; Esquivel, 2012 WL 516094 at *1; and Aguiar, 2012 WL 1593202 at 1*.

The Dilts court explained that "impact [of California's meal and rest period laws] is derived from the imposition of substantive restrictions upon the breaks taken by motor carrier drivers and drivers' helpers, which binds the motor carriers to a set of routes, services, schedules, origins, and destinations that it would otherwise would not be bound to—thereby interfering with the competitive market forces in the industry." Dilts, 819 F. Supp. 2d at 1122. As the same reasoning applies to Plaintiffs' present claims, DIII therefore argues that this court should also conclude that the California meal and wage period laws are preempted.

Plaintiffs counter that various courts, including the Ninth Circuit in Cal. For Safe & Competitive Dump Truck Trans. v. Mendonca, 152 F.3d 1184 (9th Cir. 1998), have determined that similar State laws are not be preempted. Mendonca dealt with the possible preemption of California's Prevailing Wage Law ("CPWL")[1] by ERISA. Id. at 1186. In Mendonca, the Ninth Circuit began its analysis by assuming that "[S]tate laws dealing with matters traditionally within a State's police powers are not to be preempted unless Congress's intent to do so is clear and manifest." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). The Ninth Circuit then turned to the Supreme Court's analysis in Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A. Inc., 519 U.S. 645 (1995), which held that ERISA did not preempt CPWL. The Ninth Circuit reasoned that the relationship between the CPWL and ERISA plans was too tenuous to preempt a State law in an area of traditional State regulation. Mendonca, 152 F.3d 1188-89 (citing Dillingham, 519 U.S. at 317). As Plaintiffs have similarly asserted a CPWL claim and believe that their other claims are related to that CPWL claim, they believe that Mendonca's reasoning should instead apply and that their claims are therefore not preempted.

Plaintiffs also rely on the Federal Motor Carrier Safety Administration's ("FMCSA") refusal to preempt California's meal and rest break laws and regulations in 2008 after being

---

[1] The CPWL requires that contractors and subcontractors who are awarded public works contracts to pay their workers "not less than the general prevailing rate . . . for work of a similar character in the locality in which the public work is performed." Cal. Lab. Code § 1771.

petitioned by Penske and other commercial carriers. The FMCSA rejected the proposal because it believed that California's laws only had a limited effect on motor carriers, which was insufficient to find preemption. See Petition for Preemption of California Regulations on Meal Breaks and Rest Breaks for Commercial Motor Vehicle Drivers; Rejection for Failure to Meet Threshold Requirement, 73 F.R. 79,204 (Dec. 24, 2008). The FMCSA also feared that preempting California's meal and rest period laws might to lead to a slippery slope that would lead to the preemption of other laws, such as tax or environmental laws. Id.

Defendant counters that Mendonca is inapplicable because, unlike prevailing wage laws which simply raise the cost of doing business, California's meal and rest period laws "substantively impact a motor carrier's routes and services." Dilts, 819 F. Supp. 2d at 1121 (distinguishing Mendonca and noting that the objectives of ERISA and the FAAAA differ substantially). As noted by Dilts, requiring DIII to provide breaks at specified times prevents DIII from offering certain routes where places to take a break are unavailable. Dilts, 819 F. Supp. 2d at 1120; Esquivel, 2012 WL 516094 at *5; Aguiar, 2012 WL 1593202 at *1 (citing Dilts and noting that off-duty breaks would "interfere with competitive market forces within . . . the industry"). Compared to the increased labor costs imposed by the CPWL as analyzed in Mendonca, California's meal and rest period laws impose a substantially greater burden on motor carriers.

As this case does not differ substantially from Dilts, Esquivel, and Aguiar, this court adopts their reasoning and concludes that California's meal and rest period laws have a significant indirect impact on motor carriers. Mendonca does not save Plaintiffs because the CPWL affected only labor costs, not the price of services, the routes taken, or the services offered by motor carriers. Moreover, permitting California's government to impose this burden would also defeat the FAAAA's purpose: to remove the unreasonable burden that varying State motor carrier laws would otherwise place on interstate commerce.

This court also believes that any slippery slope concerns are tapered by the significant impact requirement on laws indirectly affecting price, route, or services offered. For example, here, complying with California's meal and rest period laws would force motor carriers to use routes only if drivers could stop at various points. Predicting which rest locations might be available when drivers need to stop would be difficult due to variances in traffic, weather, or other happenstance. Such impact far exceeds the impact of CPWL.

Plaintiffs alternatively argue that California's laws are exempted under the FAAAA's safety exception. 49 U.S.C. § 14501(c)(2) (permitting States to regulate safety). Plaintiffs first cite the IWC Order 9(11), which provides a flexible approach for drivers, including the use of "On Duty Meal Period Agreements" for drivers. "Because the Wage Order has the force of law and was specifically directed toward promoting worker and motor vehicle safety, Plaintiffs submit that the Wage Order provisions in Section 11 and 12 (relating to meal and rest periods) fall into the safety exception." Opp. to MTD at 12. However, this argument was also addressed by and rejected in Dilts, which noted that the "kinds of general public health concerns that are (or may be) involved in the California [meal and rest period] laws are not within the scope of the motor vehicle safety exception." Dilts, 819 F.Supp.2d at 1122. As such, the California meal and rest period laws do not fall under the FAAAA's safety exception.

Accordingly, this court concludes that each element specified in Morales' preemption test has been met: (1) California's meal and rest period laws have a significant impact on motor carriers; (2) California passed these laws using its power to regulate the market; and (3) no applicable FAAAA exceptions apply.

However, the court does not believe that Plaintiffs' allegations that DIII's automatic deduction for untaken half-hour breaks are preempted as they could constitute a possible breach of contract. Plaintiffs may therefore amend their complaint to recover these allegedly unpaid wages at their normal contractual rate and not the premium wages provided for in California's

preempted meal and rest period laws.  Plaintiffs may also validly assert other associated claims, including  failure to pay overtime wages in violation of California Labor Code §§ 1194 and 510; failure to pay prevailing wages upon public work sites in violation of California Labor Code §§ 1773, *et seq.*; failure to provide accurate itemized wage statements and records of all hours worked in violation of California Labor Code § 226; failure to timely pay all wages due upon separation in violation of California Labor Code § 203; unfair business practices in violation of California Business & Professions Code §§ 17200, *et seq.*; and violations of PAGA, California Labor Code §§ 2698, *et seq.*

### III. CONCLUSION

For the aforementioned reasons, DIII's motion to dismiss for failure to state a claim is granted as Plaintiffs' claims are preempted by the FAAAA with leave to amend.  This court also *sua sponte* remands this case back to State court and directs Plaintiffs to file any amended complaint there.

**IT IS SO ORDERED.**

DATED: December 4, 2012

Jeffrey T. Miller
United States District Judge